[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  16-12279

_____

D.C. Docket No. 1:16-cv-00191-KD-M

VERNON MADISON,

Petitioner–Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,

Respondent–Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(March 15, 2017)

Before WILSON, MARTIN, and JORDAN, Circuit Judges.

MARTIN, Circuit Judge:

Thirty years ago, the Supreme Court held that the Eighth Amendment prohibits the execution of a person who is incompetent.[1]  Ford v. Wainwright, 477 U.S. 399, 409–10, 106 S. Ct. 2595, 2602 (1986).  The Court has since clarified that a person cannot be executed if he lacks a "rational understanding" of the reason for his execution.  Panetti v. Quarterman, 551 U.S. 930, 954–60, 127 S. Ct. 2842, 2859–62 (2007).  This standard requires the prisoner to be able to rationally understand the connection between the crime he committed and the punishment he is to receive.  See Ferguson v. Sec'y, Florida Dep't of Corr., 716 F.3d 1315, 1336 (11th Cir. 2013).  The Supreme Court told us that if the prisoner does not understand this connection, "the punishment can serve no proper purpose" and cannot be carried out.  Panetti, 551 U.S. at 960, 127 S. Ct. at 2862.

This habeas petitioner, Vernon Madison, is a 66-year-old man on death row for the murder of a police officer over three decades ago.  In recent years, Mr. Madison has suffered strokes resulting in significant cognitive and physical decline.  His lawyers argue here that he is mentally incompetent to be executed under Ford and Panetti.  Finding that Mr. Madison had made a substantial threshold showing of incompetency, an Alabama trial court held a competency hearing.  At the hearing, Mr. Madison presented unrebutted testimony from Dr.

---

[1] While the Court used the term "insane" in Ford, post-Ford decisions identify the issue as "competency to be executed."  E.g., Herrera v. Collins, 506 U.S. 390, 439, 113 S. Ct. 853, 881 (1993).

John Goff that his strokes caused major vascular disorder (also known as vascular dementia) and related memory impairments and that, as a result, he has no memory of committing the murder—the very act that is the reason for his execution.  To the contrary, Mr. Madison does not believe he ever killed anyone.  Dr. Goff testified that due to his memory impairments, Mr. Madison does not have a rational understanding of why the state is seeking to execute him.  The State presented expert testimony from Dr. Karl Kirkland.  Dr. Kirkland testified that Mr. Madison was able to accurately discuss his legal appeals and legal theories with his attorneys and—on pretty much this basis alone—concluded that Mr. Madison has "a rational understanding of [his] sentence."  Accepting the testimony of Dr. Kirkland, the Alabama trial court decided that Mr. Madison is competent to be executed.  Mr. Madison argues that the trial court's decision relied on an unreasonable determination of the facts and involved an unreasonable application of the law.  We agree.

In so holding, we are mindful of the great deference due to state court decisions on federal habeas review, particularly when the state court is applying a general standard like the one in Panetti.  See Harrington v. Richter, 562 U.S. 86, 101, 131 S. Ct. 770, 786 (2011) ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." (quotation omitted)).  But "even a general standard may be applied in an unreasonable

3

manner." Panetti, 551 U.S. at 953, 127 S. Ct. at 2858. Panetti may set out a general standard for competency, but the focus of the inquiry is clear. Panetti doesn't ask whether the prisoner can talk about the history of his case or legal theories with his attorneys. Instead, Panetti requires courts to look at whether the prisoner is able to rationally understand the connection between the crime he committed and the punishment he is to receive. See Panetti, 551 U.S. at 960, 127 S. Ct. at 2862. One of the experts testified that due to a mental disorder, Mr. Madison was not able to make this connection. The other expert never addressed this question at all. This record is therefore wholly insufficient to support the trial court's decision. We conclude that the state court's decision that Mr. Madison is competent to be executed rested on an unreasonable determination of the facts and involved an unreasonable application of Panetti. We therefore reverse the District Court's denial of habeas relief.

## I. BACKGROUND AND PROCEDURAL HISTORY

Mr. Madison has been tried three times for killing a police officer in 1985. Madison v. State, 718 So.2d 90, 94 (Ala. Crim. App. 1997). His first two convictions were reversed. At his third trial, the jury found Mr. Madison guilty of capital murder and recommended a life sentence by an 8-4 vote. See id. The trial judge overrode the jury's recommendation and sentenced Mr. Madison to death. Id. His conviction and sentence were affirmed by the Alabama Court of Criminal

Appeals, id. at 104, and the Alabama Supreme Court. Ex parte Madison, 718 So. 2d 104, 108 (Ala. 1998).

In February 2016, following the denial of state and federal habeas relief, Mr. Madison filed a petition for suspension of his death sentence in the Circuit Court of Mobile County, Alabama, arguing that he was incompetent to be executed under Ford and Alabama law. See Ala. Code § 15-16-23 (providing that the trial court shall suspend the execution of a death sentence if "it is made to appear to the satisfaction of the trial court that the [prisoner] is then insane"). The Alabama trial court found that Mr. Madison had made a preliminary showing of incompetency, ordered that Mr. Madison be evaluated by a court-appointed expert, and scheduled a competency hearing. At the competency hearing, the court heard testimony from the court-appointed expert as well as Mr. Madison's expert. The court issued an order on April 29, 2016, finding that Mr. Madison was competent to be executed. Under state law, this ruling is not subject to review by any other Alabama court. See Ala. Code § 15-16-23.

Mr. Madison then filed a motion for a stay of execution and a petition for federal habeas relief in the U.S. District Court. The District Court found that Mr. Madison had exhausted his Ford claim, but it denied relief on the merits.[2] Mr.

---

[2] Although this is Mr. Madison's second federal habeas petition, it is not barred as "second or successive" under 28 U.S.C. § 2244(b) because his Ford claim did not become ripe until his execution was imminent. See Panetti, 551 U.S. at 945–47, 127 S. Ct. at 2853–55.

Madison appealed, and we granted Mr. Madison's motion for a certificate of appealability, stayed his execution, and ordered expedited briefing on the merits of his Ford claim.

## II.  FACTS

### A.  MR. MADISON'S CURRENT MEDICAL CONDITION

Mr. Madison, who is 66 years old, has a history of physical and mental impairments.  He is legally blind, cannot walk independently, is incontinent, and has slurred speech.  He has also suffered at least two recent strokes—one in May 2015 and another in January 2016.[3]  The May 2015 stroke was severe, and affected Mr. Madison's vision while also causing a substantial deficit in motor coordination.  After this stroke, he showed signs of memory loss, repeatedly asking that his mother be informed that he had a stroke despite the fact that she had passed away several years earlier.  On January 4, 2016, Mr. Madison had another stroke. He was found in his prison cell, unresponsive and incontinent.  Medical records document that Mr. Madison was in an altered mental status after the January 2016 stroke.  He appeared "very confused" and disoriented, and he exhibited signs of memory loss.

Following these strokes, Mr. Madison's legal team noticed a significant decline in his mental status, including memory loss, difficulty communicating, and

---

[3] The record indicates that Mr. Madison likely suffered other strokes before May 2015.

6

profound disorientation and confusion.  Mr. Madison reported frequently urinating

on himself because "no one will let me out to use the bathroom," although he has a

toilet in his cell.  And Mr. Madison told his attorney during a visit in February

2016 that he planned to move to Florida after his release from prison.  As a result,

Mr. Madison's attorneys requested—and the Alabama trial court granted—a

hearing to determine whether Mr. Madison is competent to be executed.

## B.  THE STATE COURT COMPETENCY HEARING

Before the hearing, Mr. Madison was evaluated by Dr. Kirkland, the court-

appointed psychologist, and Dr. Goff, a neuropsychologist retained by Mr.

Madison's counsel.  Both experts reviewed Mr. Madison's medical records and

examined him.  Both experts testified at the hearing and prepared written reports

that were admitted into evidence.

### 1.  The Expert Reports

In his report, Dr. Kirkland acknowledged that Mr. Madison's strokes had

caused significant physical and cognitive decline and found no indication of

malingering.  Despite this decline, Dr. Kirkland found that Mr. Madison was able

to accurately describe the history of his case regarding his appeals and was aware

that the trial judge had overridden the jury's life sentence.  Dr. Kirkland also noted

that Mr. Madison could discuss details from his youth, such as where he attended

elementary and high school.  The report concluded that "Mr. Madison appears to

be able to have a rational understanding of the sentence, the results or effects of the sentence, and to still be able to discuss defense and legal theories with his attorneys."

Dr. Goff's report also concluded that Mr. Madison had suffered "significant cognitive decline" due to his strokes and that there was no clinical indication of malingering. He administered the fourth edition of the Weschsler Adult Intelligence Scale (WAIS-IV) and calculated a General Ability Index of 72, which falls within the borderline range of intelligence.[4] According to Dr. Goff's report, this score marked a very significant decline from Mr. Madison's previous levels of function. The report explained that Mr. Madison's Working Memory Index of 58 reflected "a very substantial deficit" in regard to working memory and that Mr. Madison had "a significant cognitive deficit."[5]

Dr. Goff diagnosed Mr. Madison with major vascular neurological disorder (vascular dementia) and reported that Madison suffered from retrograde amnesia. As a result, Mr. Madison could not recall certain past events that happened before his January 2016 stroke. Dr. Goff's report explained that if Mr. Madison was told a fact or a series of facts he might be able to recall this new information, but he would not be able to recall any memories affected by the retrograde amnesia.

---

[4] A full scale IQ score could not be calculated because Dr. Goff was unable to administer two subscales of the WAIS-IV due to Mr. Madison's vision problems.

[5] The Working Memory Index is scored on a scale like an IQ test, where the mean is 100 and the standardization is 15.

8

According to Dr. Goff, Mr. Madison didn't have an independent recollection of his crime or the identity of the victim. Dr. Goff reported:

> When [I] asked [Mr. Madison] where he was convicted from he said, "It must have been Mobile" although he seemed unsure. Again he was able to tell me that the crime "must have been a murder." He could not identify the name of the victim. . . . [H]e indicates that he does not believe that he ever killed anybody because, "I never went around killing folks."

The report noted that Mr. Madison was not able to tell Dr. Goff the sequence of events from the offense to his arrest to the trial or any related details. During the interview, Mr. Madison said that he had been told by others that he had three trials and that the judge had overridden the jury's life sentence.

Dr. Goff reported that Mr. Madison understood the meaning of "execution" and "the idea of being dead." Dr. Goff concluded that Mr. Madison understood what he had been tried for but—because he could not remember the underlying crime and didn't believe he had ever killed anyone—"[h]e does not seem to understand the reasoning behind the current proceeding [his execution] as it applies to him."

### 2. The Evidentiary Hearing

Dr. Kirkland, Dr. Goff, and Mr. Madison's prison warden testified at the competency hearing. Dr. Kirkland emphasized Mr. Madison's ability to discuss the details of his legal appeals and the current status of his case. Dr. Kirkland also testified that Mr. Madison was aware of his execution. On redirect examination,

9

Dr. Kirkland acknowledged that Mr. Madison's mental condition had significantly deteriorated, but he testified that Mr. Madison was able to talk "about very specific things that would indicate that he could remember specific things about the time of the offense." In response to the court's question of whether Mr. Madison understood that the state was seeking retribution for an act that he had committed, Dr. Kirkland replied: "Certainly. [Mr. Madison] talked specifically about [a] death sentence versus life without [parole] in the original trial and the first retrial and in the second."

Dr. Goff's testimony at the evidentiary hearing largely followed his report. Dr. Goff testified that the stroke Mr. Madison suffered in January 2016 likely caused his memory problems. Dr. Goff described this event as a thalamic stroke—a type of stroke that commonly results in memory problems as well as other difficulties—and this conclusion was in keeping with an MRI report showing a "[t]iny focal acute to subacute infarct in the right thalamus." According to Dr. Goff, areas of Mr. Madison's brain have essentially died as a result of his strokes, and this is consistent with Mr. Madison's medical records.[6] It appeared to Dr.

---

[6] The State suggests that Mr. Madison didn't really have a thalamic stroke, pointing to medical records indicating that Mr. Madison's January 2016 event was caused by drug use. While it's true there was some evidence of drug use, both experts agreed that Mr. Madison's cognitive decline resulted from strokes. And MRI imaging confirms that Mr. Madison had a "very small acute CVA" and a "new small right thalamic infarct." "CVA" stands for "cerebrovascular accident," which is also referred to as a stroke. See Medline Plus Medical Dictionary, http://c.merriam-webster.com/medlineplus/stroke (last visited October 13, 2016). An "infarct" refers to an area of dead tissue caused by a restriction in blood flow. See id.,

Goff that the basis of Mr. Madison's knowledge about his case was information he learned from his attorneys. Dr. Goff testified that Mr. Madison understood that the State was seeking retribution but didn't understand the past act for which he was being punished. Dr. Goff concluded that Mr. Madison understood he was being executed but—because he lacked memories of his past—didn't understand why.

### 3. Warden Davenport

The state called as a witness Warden Davenport, who had served the death warrant on Mr. Madison. Mr. Davenport testified that he read the court order setting the execution date to Mr. Madison and that Mr. Madison said "my lawyers are supposed to be handling that." The Warden also testified that prisoners are assigned mental health codes if they receive mental health care. According to Mr. Davenport, Mr. Madison's mental health code was zero, which indicates that Madison was not receiving treatment for a mental health condition.

## C. THE ALABAMA COURT'S COMPETENCY DECISION

The Alabama trial court issued a written order in which it held that Mr. Madison was competent to be executed. The court identified Ford and Panetti as the relevant standards. It stated that the burden of proof was on Mr. Madison to

---

http://c.merriam-webster.com/medlineplus/infarct (last visited October 13, 2016). As Dr. Goff explained, an "infarct" is, in lay terms, a stroke. Mr. Madison's medical records also show that he has encephalomalacia, which refers to "softening of the brain due to degenerative changes in nervous tissue." See id., http://c.merriam-webster.com/medlineplus/encephalomalacia (last visited October 28, 2016). The medical records clearly establish that Mr. Madison had a stroke that affected his thalamus and that parts of his brain have died.

show, by a preponderance of the evidence, "that [he] suffers from a mental illness which deprives [him] of the capacity to rationally understand that he is being executed as a punishment for a crime."  The court's order summarized the evidence from the competency hearing, including the testimony of Dr. Kirkland and Dr. Goff.  It then found that Mr. Madison had failed to prove his incompetence by a preponderance of the evidence.  The court "accept[ed]" the testimony of Dr. Kirkland regarding Mr. Madison's understanding of his execution.  It found that Mr. Madison "has a rational[] understanding, as required by Panetti, that he is going to be executed because of the murder he committed and a rational[] understanding that the State is seeking retribution and that he will die when he is executed."

### III.  STANDARD OF REVIEW

This appeal is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[7]  AEDPA

---

[7] Mr. Madison argues that the lack of appellate review in Alabama state court for Ford claims precludes the application of AEDPA to his federal habeas petition.  See Ala. Code § 15-16-23 (prohibiting appellate review of trial court's competency finding).  Mr. Madison has good reason to be concerned about this.  AEDPA severely limits the ability of federal courts to review state court decisions for constitutional error.  As a result, state courts are the primary guardians of the constitutional rights of state prisoners.  See Burt v. Titlow, 134 S. Ct. 10, 15–16 (2013) ("Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.").  Alabama's statutory scheme relegates an important question—whether a person's impending execution is prohibited by the Constitution—to a single judge and makes that judge's determination unreviewable by the state's appellate courts.  While we have concerns about a scheme that singles out one type of constitutional claim

12

imposes a "highly deferential standard for evaluating state-court rulings." Renico v. Lett, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010) (quotation omitted). It bars federal courts from granting habeas relief on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 1172 (2003). It "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000).

A state court decision is "contrary to" clearly established federal law if the state court applied "a rule different from the governing law set forth in [Supreme Court] cases, or if it decide[d] a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685,

---

for less review (and consequently less protection) than other types of constitutional claims, we need not reach this issue because we conclude Mr. Madison is entitled to relief even under AEDPA's deferential standard of review.

13

694, 122 S. Ct. 1843, 1850 (2002).  A state court decision involves an "unreasonable application" of clearly established federal law if the state court (1) "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Williams, 529 U.S. at 407, 120 S. Ct. at 1520.  The "unreasonable application" inquiry focuses on whether the state court's application of Supreme Court precedent was "objectively unreasonable," id. at 409, 120 S. Ct. at 1521, which "requires the state court decision to be more than incorrect or erroneous."  Lockyer, 538 U.S. at 75, 123 S. Ct. at 1174.

We afford state court findings of fact "substantial deference."  Brumfield v. Cain, 576 U.S. ___, 135 S. Ct. 2269, 2277 (2015).  "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).  A finding of fact is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance."  Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct.

14

841, 849 (2010). Indeed, we presume that a state court's findings of fact are correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). But

> when a state court's adjudication of a habeas claim results in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them.

Jones v. Walker, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (en banc) (quotation omitted and alterations adopted). And we bear in mind that "[d]eference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." Miller-El, 537 U.S. at 340, 123 S. Ct. at 1041.

15

# IV. DISCUSSION[8]

## A. THE COMPETENCY STANDARD

We begin our analysis with the Supreme Court precedent on the competency standard. In Ford, the Court held that the Eighth Amendment prohibits the state from executing a person who is incompetent. The plurality opinion reasoned that the Eighth Amendment prohibits execution of "one whose mental illness prevents him from comprehending the reasons for the penalty or its implications." Ford, 477 U.S. at 417, 106 S. Ct at 2606. In a concurring opinion, Justice Powell concluded that the Eighth Amendment forbids the execution of "those who are unaware of the punishment they are about to suffer and why they are to suffer it"

---

[8] In the District Court proceedings, the parties disputed whether Mr. Madison exhausted his Ford claim in state court. There, the State argued that Mr. Madison failed to exhaust because he did not appeal the trial court's decision to the Alabama Court of Criminal Appeals. The District Court found to the contrary that Mr. Madison had exhausted his claim. Although the State did not renew this exhaustion argument on appeal, and conceded at oral argument that it wasn't sure whether its position was even correct, we write to explain that the District Court got this right.

Section 15-16-23, which grants an Alabama trial court the authority to suspend a death sentence if the petitioner is incompetent to be executed, explicitly precludes review by any other judge or court. See Ala. Code § 15-16-23 ("This mode of suspending the execution of sentence after conviction on account of the insanity of the convict shall be exclusive and final and shall not be reviewed or revised by or renewed before any other court or judge."). The Alabama Court of Criminal Appeals has twice held that § 15-16-23 precludes appellate review of the trial court's competency determination, and these decisions have not been overruled. See Weeks v. State, 663 So. 2d 1045, 1046 (Ala. Crim. App. 1995) (granting state's motion to dismiss appeal because Ala. Code § 15-16-23 "clearly states that a finding by the trial court on the issue of insanity, as it relates to this statute, is not reviewable by any other court"); Magwood v. State, 449 So. 2d 1267, 1268 (Ala. Crim. App. 1984) (concluding that it did not have jurisdiction over appeal under § 15-16-23 and declining to "creat[e] a right of appellate review contrary to the explicit language of the statute"). On this basis, we conclude that Mr. Madison properly exhausted the available state court remedies. See 28 U.S.C. § 2254(b)(1).

16

and requires that prisoners "know the fact of their impending execution and the reason for it." Id. at 422, 106 S. Ct. at 2608 (Powell, J., concurring). In Panetti, the Supreme Court revisited the competency standard and "clarified that the requisite 'awareness' or 'comprehension' required by Ford was tantamount to a 'rational understanding' of the connection between a prisoner's crimes and his execution." Ferguson, 716 F.3d at 1336 (citing Panetti, 551 U.S. at 935, 958–59, 127 S. Ct. at 2848, 2861–62). In sum, under Panetti and Ford the prisoner must rationally understand that he is going to be put to death and the reason why. See Ferguson, 716 F.3d at 1318.

In Panetti, the Supreme Court rejected the "improperly restrictive" competency test articulated by the Fifth Circuit and held that a prisoner must rationally, as well as factually, understand the reasons for his execution. Panetti, 551 U.S. at 935, 959, 127 S. Ct. at 2848, 2862. The Fifth Circuit identified the relevant inquiry as whether a prisoner "is aware that he is going to be executed and why he is going to be executed." Id. at 956, 127 S. Ct. at 2860 (quotation omitted and alteration adopted). The Fifth Circuit concluded that a prisoner is competent if he is aware he committed a crime, that he will be executed, and that his crime is the stated reason for the execution. See id. The Supreme Court rejected this standard as inconsistent with Ford because it treated "a prisoner's delusional belief system as irrelevant if the prisoner knows that the State has identified his crimes as

17

the reason for his execution." Id. at 958, 127 S. Ct. at 2861.  The Court explained that a prisoner's mental condition is relevant to the requisite "comprehension" or "awareness" if it "so impair[s] the prisoner's concept of reality that he cannot reach a rational understanding of the reason for the execution." Id. (alterations adopted).

Although Panetti identifies the concept of "rational understanding" as the focus of the competency inquiry, the Court's opinion does not define the term. See id. at 959, 127 S. Ct. at 2862.  But while Panetti declined "to set down a rule governing all competency determinations," id. at 960–61, 127 S. Ct. at 2862, it did plainly tell us what is insufficient.  Panetti explicitly rejected a bare factual-awareness standard, holding that "[a] prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it." Id. at 959, 127 S. Ct. at 2862.  In other words, it's not enough for the prisoner to merely recite the proffered reason for his execution.  Instead, Panetti tells us we must look at the prisoner's own "concept of reality," id. at 958, 127 S. Ct. at 2861—particularly as it relates to the relationship between his crime and his execution. See id. at 960, 127 S. Ct. at 2862 ("[A] severe mental disorder may put an awareness of a link between a crime and its punishment in a context so far removed from reality that the punishment can serve no proper purpose.").  After Panetti, it's therefore clear that in order to determine competency, a court must examine whether a prisoner's mental condition prevents him from appreciating the link between his crime and

18

his punishment.[9] See Panetti, 551 U.S. at 960–62, 127 S. Ct. at 2862–63;

Ferguson, 716 F.3d at 1318 (stating that the analysis of "mental competency to be

executed involves [the prisoner's] understanding of the connection between his

execution and the crimes for which he is going to be executed").

B.  THE ALABAMA COURT UNREASONABLY DETERMINED THE FACTS

Mr. Madison argues that the state trial court's decision was based on an

unreasonable determination of the facts because the court refused to consider

undisputed evidence of his diagnosed dementia and corresponding memory

deficits.  Mr. Madison points out that the trial court's order never mentions his

dementia diagnosis or engages in any analysis about how that diagnosis or his

memory impairment impacts his ability to rationally understand the reason for his

execution.  The State responds that the trial court considered all of the evidence

and simply relied on Dr. Kirkland's testimony to determine that Mr. Madison is

competent.  But our review of Dr. Kirkland's testimony leads us to conclude that it

is insufficient to support the trial court's competency determination.  Indeed, Dr.

---

[9] The rationales supporting the prohibition on the execution of people who are not competent underscore that the relevant inquiry focuses on the prisoner's subjective understanding of the reason for his execution.  Justice Powell's opinion in Ford was concerned with the prisoner's capacity to experience retribution, 477 U.S. at 422, 106 S. Ct. at 2608 (Powell, J., concurring) ("If the [prisoner] perceives the connection between his crime and his punishment, the retributive goal of the criminal law is satisfied."), and the prisoner's ability "to prepare, mentally and spiritually, for [] death," id. at 421, 106 S. Ct. at 2607.  The Ford majority spoke of the "fear and pain" that people who do not understand the reason for their execution face.  Id. at 410, 106 S. Ct. at 2602.  The Court explained that "civilized societies" feel "natural abhorrence" at killing people like this because they lack the "capacity to come to grips with [their] own conscience or deity."  Id. at 409, 106 S. Ct. at 2601.

19

Kirkland's testimony is not relevant to the competency inquiry called for by the Supreme Court.

As we have discussed, Panetti requires a court to examine whether the prisoner, due to a mental disorder, lacks a rational understanding of the connection between his crime and his execution. The only evidence presented to the state court on this question was the testimony and reports of Dr. Kirkland and Dr. Goff. That evidence shows that Mr. Madison suffers from a serious mental disorder that has left him unable to recall his capital offense and that Mr. Madison believes, to the best of his ability, he didn't kill anyone.

First, it is clear that Mr. Madison has a serious mental condition. The experts agreed that Mr. Madison's strokes have impaired his cognitive functioning. Dr. Goff diagnosed Mr. Madison with a vascular neurological disorder (vascular dementia) characterized by retrograde amnesia. Dr. Kirkland did not dispute that diagnosis. The experts agreed there was no indication that Mr. Madison was malingering.

Second, on the record before us it is uncontroverted that, due to his mental condition, Mr. Madison has no memory of his capital offense. Dr. Goff specifically evaluated Mr. Madison's cognitive abilities, including his memory, and found that while Mr. Madison is able to remember certain things from his past, he has no memory of the murder. The State presented no evidence to rebut this

20

finding. Indeed, the record includes no indication that Dr. Kirkland assessed whether Mr. Madison could remember the crime, and the State concedes that Dr. Kirkland never testified on this particular point. Rather, Dr. Kirkland testified that Mr. Madison "was able to talk with me about very specific things that would indicate that he could remember specific things about the <u>time</u> of the offense." (Emphasis added.) Dr. Kirkland's report reflected only that Mr. Madison was able to discuss certain details about his youth, such as where he attended elementary and high school, and the history of the litigation challenging his conviction and sentence. These statements do not show that Mr. Madison can remember the event that matters here—his capital offense. Dr. Goff's testimony that Mr. Madison does not remember committing the murder is therefore unrefuted.[10]

Third, the record shows that, as a result of his mental disorder, Mr. Madison does not rationally understand the connection between his crime and his execution. Dr. Goff's evaluation focused on Mr. Madison's understanding of the reason for his execution, and Dr. Goff used a checklist of interview questions specifically designed to assess a prisoner's competency to be executed.[11] On the basis of this

---

[10] The state trial court made no explicit finding as to whether Mr. Madison could remember his offense. In any event, such a finding would not have been reasonable in light of the evidence presented at the state court proceeding because there was no testimony or evidence to support it.

[11] Dr. Goff used an interview checklist published in the Journal of Behavioral Sciences and the Law. See Zapf, P.A., Boccaccini, M.T., & Brodsky, S. L., <u>Assessment of Competency for Execution: Professional Guidelines and an Evaluation Checklist</u>, 21 Behav. Sci. & L. 103

evaluation, Dr. Goff testified that Mr. Madison cannot remember the crime and doesn't believe he has killed anyone.  Dr. Goff therefore concluded that Mr. Madison doesn't understand why he is going to be punished or the act for which he is to be punished.  Dr. Goff's testimony addressed the core question posed by Panetti—whether Mr. Madison rationally understands that his crime is the reason for his execution.  In stark contrast, Dr. Kirkland's report and testimony include no indication that he evaluated whether Mr. Madison understood this connection at all.[12]  Dr. Kirkland didn't refute any of Dr. Goff's conclusions.  Instead, the conclusions in Dr. Kirkland's report appear to rely exclusively on Mr. Madison's ability to discuss the history of his case.

Dr. Kirkland's testimony at the competency hearing demonstrates that he simply wasn't looking at the right issues.  Dr. Kirkland summarized his relevant findings as follows:  First, "[Mr. Madison] was able to discuss his case with me in detail, in particular, each returned trip to [the sentencing] court"; and, second, "he was able to discuss the posture of the case at this point in an accurate fashion, and

---

(2003).  The checklist is divided into four sections: (1) understanding the reasons for punishment, (2) understanding the punishment, (3) appreciation and reasoning (in addition to simple factual understanding), and (4) ability to assist the attorney.  Id. at 114.  In his report, Dr. Goff noted that he attempted to complete the first section of the checklist, which focuses on the individual's understanding of the crime and other conviction-related information.  Id.; see also id. at 117–18.  Dr. Goff was not able to follow the suggested outline because of Mr. Madison's "tendency to repeat himself and his tendency to go off on tangents and start talking about other issues."

[12] Although Dr. Kirkland has performed a significant number of competency evaluations in other contexts (e.g., competency to stand trial), Mr. Madison was the first prisoner he evaluated for his competency to be executed.

22

indicated that he knew what the original sentence was as well as why the case has been tried three times." But this evidence shows only that Mr. Madison understands the procedural history of his case and is aware that he has been sentenced to death. Demonstrating this distinction, when the trial court asked Dr. Kirkland whether Mr. Madison understood that the State was seeking retribution for an act Madison had committed in the past, Dr. Kirkland replied, "Certainly. [Mr. Madison] talked specifically about [a] death sentence versus life without [parole] in the original trial and the first retrial and in the second." That's all Dr. Kirkland said. Mr. Madison's ability to distinguish between a death sentence and a life sentence does not show—or even suggest—that he understands that his death sentence means he will be put to death because of the crime he committed.

The critical fact underlying the state court's competency decision was that Mr. Madison rationally understands "that he is going to be executed <u>because of the murder he committed.</u>" (Emphasis added.) But nothing in the record supports this finding.[13] Dr. Kirkland never testified that Mr. Madison understands that his

---

[13] The dissent says that Dr. Kirkland's testimony supports the state court's competency finding. We respectfully disagree. No testimony from Dr. Kirkland bears on Mr. Madison's ability to understand the connection between the murder he committed in 1985 and his execution. Dr. Kirkland's testimony that Mr. Madison understands his legal appeals and can discuss legal theories with his attorneys could perhaps demonstrate that Mr. Madison is competent to stand trial. See Drope v. Missouri, 420 U.S. 162, 171, 95 S. Ct. 896, 903 (1975) (competency to stand trial requires that the defendant have "the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense"). But, as we've explained, it does not show that he is competent to be executed.

execution is connected to the murder he committed. And none of Dr. Kirkland's testimony otherwise bears on Mr. Madison's ability to understand the connection between his past crime and his execution. The only evidence in the record that does address this issue demonstrates that, due to his serious mental disorder, Mr. Madison does not understand the connection between his crime and his execution. Dr. Goff's testimony showed that Mr. Madison cannot remember his crime, doesn't believe he committed murder, and therefore cannot rationally connect his crime to his execution. Dr. Kirkland didn't talk about Mr. Madison's ability to make this connection at all. As a result, the state court's finding that Mr. Madison "has a rational[] understanding . . . that he is going to be executed because of the murder he committed" is not supported by the record and is therefore plainly unreasonable.[14] See Burgess v. Comm'r, Ala. Dep't of Corr., 723 F.3d 1308, 1319

---

Although the dissent portrays the state court as reasonably choosing between two experts, this record does not contain conflicting expert testimony on the critical issue of whether Mr. Madison rationally understands the connection between the murder he committed and his execution. As a result, this is not a situation in which the state court simply credited one expert over another. Cf. Ferguson, 716 F.3d at 1339–40 (concluding that petitioner was not entitled to relief under § 2254(d), in part because the state court merely credited the testimony of some experts over others).

[14] Although the Supreme Court has "not yet defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)," Brumfield, 135 S. Ct. at 2282 (quotation omitted), and neither has this Court, Landers v. Warden, Atty. Gen. of Ala., 776 F.3d 1288, 1293 n.4 (11th Cir. 2015) ("The interaction between [§ 2254](d)(2) and (e)(1) . . . is an open question in this circuit."), Mr. Madison has met his burden under either standard. Nothing in the record supports the state court's factual determination. And the unrebutted expert testimony on this point shows the exact opposite. We therefore conclude Mr. Madison has produced clear and convincing evidence that he does not rationally understand the connection between his past crime and his execution. See Ward v. Hall, 592 F.3d 1144, 1178 (11th Cir. 2010) (concluding habeas petitioner had rebutted

24

(11th Cir. 2013) (holding state court's ruling was an unreasonable determination of the facts because the record was "insufficient to support its conclusions"); Green v. Nelson, 595 F.3d 1245, 1251 (11th Cir. 2010) (concluding the state court's determination had "no basis in th[e] record" and was therefore unreasonable under § 2254(d)(2)). We therefore conclude that the state court's decision that Mr. Madison is competent to be executed rests on an unreasonable determination of the facts.

## C. THE ALABAMA COURT UNREASONABLY APPLIED THE LAW

This record also leads us to conclude that the state court's decision involved an unreasonable application of clearly established federal law. The state court cited Panetti in support of its finding that Mr. Madison was competent to be executed. But, considering the evidence presented at the competency hearing, this finding "cannot be reconciled" with any reasonable application of Panetti. 551 U.S. at 953, 127 S. Ct. at 2858.

The State argues that Mr. Madison cannot succeed under AEDPA because Ford and Panetti didn't hold that the specific mental conditions relevant here, dementia and related memory loss, "definitively preclude rational understanding." Rather, the State suggests that only a prisoner suffering from gross delusions can

---

the presumed correctness of the state court's factual finding when "there [was] no contrary evidence in the record to refute" the petitioner's evidence).

show incompetency under Panetti.[15]  This is not consistent with our reading of Ford and Panetti.  Neither case says a prisoner must suffer from delusions in order to be deemed incompetent.  Indeed, such a narrow and rigid rule would be inconsistent with the principles underlying those decisions.  The Supreme Court was concerned with a much broader question.  That is, whether a prisoner's "current mental state [] bar[s] his execution" under the Eighth Amendment, Panetti, 551 U.S. at 934, 127 S. Ct. at 2848, by preventing him from "comprehending the meaning and purpose of the punishment," id. at 960, 127 S. Ct. at 2862.

Panetti requires a court making a competency determination to analyze the prisoner's understanding of the connection between his crime and his execution. See Panetti, 551 U.S. at 960, 127 S. Ct. at 2862 (focusing on the prisoner's "awareness of a link between [his] crime and [his] punishment"); see also Ferguson, 716 F.3d at 1336.  And the Supreme Court has told us that the prisoner's own "concept of reality" is relevant to this determination.  See Panetti, 551 U.S. at 958–60, 127 S. Ct. at 2861–62.  Courts may not conflate a prisoner's mere awareness of the stated reason for his execution with a rational understanding of

---

[15] At oral argument, the State argued that a prisoner who has severe dementia that doesn't result in delusions but has completely obliterated his memory would be competent to be executed because the mere fact that a prisoner doesn't suffer from delusions means that he can form the rational understanding required by Panetti.

26

that reason—"[a] prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it." Id. at 959, 127 S. Ct. at 2862.

In short, the Supreme Court has made it clear that to determine competency, a court must examine the prisoner's understanding of the connection between his crime and his execution, taking into account any impairments resulting from a mental disorder. See Panetti, 551 U.S. at 958–60, 127 S. Ct. at 2861–62. The state court didn't do that here. The court never considered the impact of Mr. Madison's memory loss or his belief that he never killed anyone on his ability to make the required connection between his crime and his execution. And the evidence the trial court did consider—namely, Dr. Kirkland's testimony—did not address Mr. Madison's understanding of this connection at all. Therefore, under any reasonable interpretation of Panetti, this record cannot support the trial court's finding that Mr. Madison is competent to be executed.

A closer look at the competency standard rejected by the Supreme Court in Panetti as "too restrictive" makes this obvious. Id. at 956, 127 S. Ct. at 2860. The Fifth Circuit's test before the Court in Panetti considered a prisoner competent if he was aware of committing the underlying crime, aware that he will be executed, and aware that the reason the state has given for his execution is the underlying crime. See id. But, even under this standard, Mr. Madison cannot be deemed competent. The record shows that, due to his dementia, he isn't aware that he

27

committed the underlying crime—he doesn't remember the crime and he believes, to the best of his ability, he has never killed anyone. Panetti clearly established that the Fifth Circuit's "bare and narrow factual-awareness" test was too restrictive, see Ferguson, 716 F.3d at 1335, so this trial court's determination that Mr. Madison is competent is wholly inconsistent with Panetti.

We are aware that the Supreme Court recognized "a concept like rational understanding is difficult to define." Panetti, 551 U.S. at 959, 127 S. Ct. at 2862. But Panetti plainly requires courts making competency determinations to analyze whether the prisoner understands "the connection between his execution and the crimes for which he is going to be executed." Ferguson, 716 F.3d at 1318. The state court failed to do that here. If a court can find a prisoner competent to be executed without evidence that he understands why he is being punished, Panetti doesn't stand for much.

AEDPA requires us to ask whether "some fairminded jurists could agree," with the state court's competency determination in light of the Panetti standard and the evidence presented to the state court. See Ferguson, 716 F.3d at 1340 (quotation omitted). Given the unrebutted evidence that Mr. Madison suffers from vascular dementia, has no memory of his capital crime, was not malingering during the experts' evaluations, and believes that he has not killed anyone—as well as the utter lack of any testimony that Mr. Madison understands the connection between

28

the murder he committed and his impending execution—the answer here is no.  A person cannot rationally understand why he is being killed if, according to his "concept of reality," he never committed a crime.  Panetti, 551 U.S. at 958, 127 S. Ct. at 2861.  A finding that a man with no memory of what he did wrong has a rational understanding of why he is being put to death is patently unreasonable.

## V.  CONCLUSION

Because the Alabama trial court unreasonably determined the facts relevant to Mr. Madison's claim and unreasonably applied controlling federal law, we do not owe the state court's finding that Mr. Madison is competent to be executed deference under AEDPA.  We therefore review the merits of Mr. Madison's claim de novo.  See  Adkins v. Warden, Holman CF, 710 F.3d 1241, 1255 (11th Cir. 2013); Cooper v. Sec'y, Dep't of Corr., 646 F.3d 1328, 1353 (11th Cir. 2011) .

Under Panetti there are two relevant questions.  First, whether Mr. Madison rationally understands the connection between his crime and his execution—that is, whether he understands that he is going to be executed because of the murder he committed.  Ferguson, 716 F.3d at 1342.  And second, whether Mr. Madison understands that he will die when he is executed.  Id.  It is undisputed that Mr. Madison understands that his execution will result in his death.  But for the second question, the evidence shows that, due to his dementia and related memory impairments, Mr. Madison lacks a rational understanding of the link between his

29

crime and his execution.  Mr. Madison may have been told that he is being executed because of the murder he committed, but he doesn't remember his capital offense, and according to his perception of reality he never committed murder. This record is without evidence that Mr. Madison is malingering, and there is no finding by the trial court to that effect.  A person does not rationally understand his punishment if he is simply blindly accepting what he has been told.  See Panetti, 551 U.S. at 959, 127 S. Ct. at 2862 ("A prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it."); see also Ferguson, 716 F.3d at 1344 (Wilson, J., concurring) ("Panetti requires more than just a prisoner's ability to regurgitate the State's announced reason for his punishment or to recite the facts attendant to his execution.").  Dr. Goff testified that Mr. Madison does not understand why he is being executed or the act for which he is being punished.  None of the evidence at the competency hearing belies Dr. Goff's testimony.  We therefore conclude that Mr. Madison is incompetent to be executed.

**REVERSED**.

30

JORDAN, Circuit Judge, dissenting.

After reviewing the record, I believe that Vernon Madison is currently incompetent. I therefore do not think that Alabama can, consistent with the Constitution, execute him at this time for his murder of a police officer three decades ago. *See generally Panetti v. Quarterman*, 551 U.S. 930, 958 (2007) (explaining that a state cannot put to death a prisoner who "cannot reach a rational understanding of the reason for the execution"). But Congress has chosen to generally prohibit federal courts from adjudicating constitutional claims anew on habeas review, so Mr. Madison's competency (or lack thereof) is not our initial call to make. Under the restrictive standards we are required to apply, *see* 28 U.S.C. § 2254(d), and given the way we interpreted *Panetti* in *Ferguson v. Secretary*, 716 F.3d 1315 (11th Cir. 2013), I do not think Mr. Madison can obtain habeas relief.

**I**

Mr. Madison asserts that the state trial court's decision is not entitled to AEDPA deference because Alabama law does not provide for any appellate review. *See* Br. for Appellant at 20–26. But he did not present this theory to the district court, and normally we do not entertain arguments raised for the first time on appeal. *See, e.g.*, *Landers v. Warden*, 776 F.3d 1288, 1296–97 (11th Cir. 2015). I understand that we have discretion to address an unpreserved claim, *see, e.g.*, *Burns v. Secretary*, 720 F.3d 1296, 1303 n.2 (11th Cir. 2013) (citing cases), but I

31

would not exercise such discretion here because Mr. Madison never sought a certificate of appealability on this issue.

## II

Mr. Madison argues that the state trial court improperly applied a competency standard which required him to show that he suffered from a mental illness, and refused to consider his dementia and corresponding memory deficits. As a result, he says, the state trial court's decision was contrary to, and an unreasonable application of, *Ford v. Wainwright*, 477 U.S. 399 (1986), and *Panetti*. *See* Br. for Appellant at 26–31. I am not convinced by this argument.

First, the state trial court cited both *Ford* and *Panetti* in its order. And it correctly quoted *Panetti* for the proposition that "[a] prisoner's awareness of the [s]tate's rationale for an execution is not the same as a rational understanding of it. *Ford* does not foreclose inquiry into the latter." D.E. 8-2 at 4 (quoting *Panetti*, 551 U.S. at 959) (internal quotation marks omitted).

Second, although I strongly disagree with Alabama's contention that mental illness is a necessary (though not sufficient) prerequisite for a finding of incompetency under *Ford* and *Panetti*—I can imagine a number of scenarios where lack of competency is not due to mental illness—Mr. Madison told the state trial court at the evidentiary hearing that the applicable competency standard was the one approved in *Weeks v. Jones*, 52 F.3d 1559, 1568 (11th Cir. 1995), i.e., the

32

standard found in Standard 7-5.6(b) of the American Bar Association's Criminal Justice Mental Health Standards (which itself refers to "mental illness"), as modified by *Panetti*. Mr. Madison explained the standard as follows:

> [T]his [c]ourt would have the obligation of determining whether Mr. Madison, *as a result of mental illness* or mental retardation, cannot understand the nature of the pending proceeding, what he . . . was tried for, the reason for the punishment, or the nature of the punishment. And I'm reading from *Weeks*. . . . The convict is also incompetent if, *as a result of mental illness* or retardation, the convict lacks sufficient capacity to recognize or understand any fact which may exist which would make the punishment unjust or lawful, or lacks the ability to convey such information to counsel or the [c]ourt. Obviously, there's the United States Supreme Court decision in *P[a]netti* as well, which describes the standard as one of having a rational understanding of the proceedings and not just a factual understanding of what's happening.

D.E. 8-1 at 7–8 (emphasis added). Because Mr. Madison urged the state trial court to use the *Weeks* standard, which referred to mental illness, he cannot now complain that it did as he asked. *See, e.g.*, *F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 65–66 (11th Cir. 2013) (concluding that party which argued for a certain standard in the district court invited error and could not request a different standard on appeal).

### III

Mr. Madison contends that the state trial court erred in finding him competent to be executed. This claim is a difficult one, but at the end of the day I

33

do not believe that Mr. Madison can overcome the presumption of correctness afforded to the state trial court's factual finding by clear and convincing evidence.

## A

A state can, consistent with the Due Process Clause of the Fourteenth Amendment, presume that a defendant is competent, and place the burden on him to show otherwise by a preponderance of the evidence. *See Medina v. California*, 505 U.S. 437, 446–53 (1992); *Cooper v. Oklahoma*, 517 U.S. 348, 355–56 (1996). Unfortunately, the Alabama statute at issue here, Ala. Code § 15-16-23, is silent on who has the burden of proof as to competency, and because the statute does not allow for appellate review of a trial court's competency ruling, *see, e.g.*, *Weeks v. State*, 663 So. 2d 1045, 1046 (Ala. Crim. App. 1995), there are no reported decisions in Alabama which address the burden of proof. Our cases involving § 15-16-23 are also silent on that issue. *See, e.g.*, *Magwood v. Smith*, 791 F.2d 1438, 1445–47 (11th Cir. 1986).[1]

In its order, the state trial court explained that the parties had agreed that Mr. Madison had the burden of showing, by a preponderance of the evidence, that he is incompetent and cannot be executed. *See* D.E. 8-2 at 4. When he filed his habeas

---

[1] One of our opinions, *James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992), says—without citing any authority—that a "petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or incompetency by a preponderance of the evidence." This language, however, is dicta because the *James* panel only addressed whether the Florida petitioner in that case had done enough to obtain an evidentiary hearing in the district court.

corpus petition, Mr. Madison did not take issue with the state trial court's statement. *See* D.E. 1 at 15–16. And in his brief here Mr. Madison does not quarrel with the state trial court's allocation of the burden of proof. It seems to me, therefore, that our § 2254(d)(2) analysis must proceed with the understanding that in the state trial court Mr. Madison bore the burden of establishing that he is incompetent. That necessarily means, of course, that Alabama did not have to establish that Mr. Madison is competent.[2]

## B

The state trial court's determination that Mr. Madison is competent under *Panetti* constitutes a finding of fact. *See, e.g., Demosthenes v. Baal*, 495 U.S. 731, 735 (1990) (pre-AEDPA); *Lawrence v. Secretary*, 700 F.3d 464, 476–77 (11th Cir. 2012) (post-AEDPA). Under AEDPA that finding of fact is "presumed to be correct," and Mr. Madison shoulders the burden of rebutting that "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Clear and convincing evidence, as we have explained, is "an intermediate standard of proof

---

[2] Some Alabama cases, in addressing competency to stand trial under Ala. Code § 15-16-22, have explained that the defendant bears an initial burden of producing evidence that he is incompetent, but once he does so the state "must then prove that [he] is competent." *Lackey v. State*, 615 So. 2d 145, 152 (Ala. Crim. App. 1992). Mr. Madison has not tried to place the burden on Alabama even though dicta in *Magwood v. State*, 689 So. 2d 959, 973 (Ala. Crim. App. 1996), suggests that "[t]he standards and guidelines concerning [§ 15-16-23] are analogous to those concerning the determination of competence to stand trial established in § 15-16-22[.]"

that lies between proof by a preponderance of the evidence and proof beyond a reasonable doubt." *Fults v. GDCP Warden*, 764 F.3d 1311, 1314 (11th Cir. 2014).

Significantly, we do not apply *Panetti* and *Ford* in a vaccum.  In *Ferguson*, we explained that *Panetti*, though rejecting a "bare and narrow factual-awareness standard[,] . . . did not abrogate or otherwise reject the awareness standard articulated by Justice Powell [in *Ford*], nor did it impose a new, more rigorous standard for assessing competency to be executed."  716 F.3d at 1335.  "Instead, the Supreme Court in *Panetti* generally accepted the proposition that *Ford* had laid down the 'substantive federal baseline for competency,' and it clarified that the requisite 'awareness' or 'comprehension' required by *Ford* was tantamount to a 'rational understanding' of the connection between a prisoner's crimes and his execution."  *Id.* at 1335–36 (citation omitted).  "What the Supreme Court rejected in *Panetti* was an overly narrow interpretation of *Ford* that deems a prisoner's mental illness and delusional beliefs irrelevant to whether he can understand the fact of his pending execution and the reason for it."  *Id.* at 1336.

In *Ferguson* we also pointed out that *Panetti* declined to provide a definition of the phrase "rational understanding," except to say that "'normal' or 'rational' in this context does not mean what a layperson understands those terms to mean."  *Id.* at 1337 (citation omitted).  And "[b]ecause the Supreme Court refrained from

36

clearly establishing in *Panetti* any definition of rational understanding," we said that "state courts can hardly be faulted for not clearly defining it themselves." *Id.*

There is, undoubtedly, evidence in the record which shows that Mr. Madison—given his thalamic stroke, ensuing vascular dementia, and numerous other significant medical problems—is incompetent. Dr. John Goff, for example, concluded that Mr. Madison is not competent. Mr. Madison, according to Dr. Goff, does not remember who his victim was. *See* D.E. 8-1 at 59. And although Mr. Madison realizes that he is going to be executed, Dr. Goff believes that he does not understand why due to the loss of episodic (i.e., event-specific) memory. *See id.* at 48, 55. Dr. Goff reached his conclusion after examining Mr. Madison, administering a number of tests to him, interviewing other individuals who interacted with him, and reviewing his medical history. *See id.* at 40–53. I personally find Dr. Goff's opinion persuasive and would credit it if I were the factfinder, but that is not my role. *See Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").[3]

---

[3] I do note, however, that Dr. Goff was not aware that Mr. Madison had never admitted that he was guilty of murder, and had tried to establish that he acted in self-defense. *See* D.E. 8-1 at 65; *Madison v. State*, 718 So.2d 90, 97 (Ala. Crim. App. 1997).

37

What matters here is that there is evidence in the record which supports a finding that Mr. Madison is competent.    Dr. Karl Kirkland, following an examination of Mr. Madison and a review of his medical records, concluded that he is competent despite a decline in cognitive functioning.  *See* D.E. 8-1 at 17.  As set forth in his report, which was admitted as Court Exhibit 1 at the state court evidentiary hearing, Dr. Kirkland reached his conclusion based on findings that Mr. Madison (a) does not have "psychosis, paranoia, or delusion;"  (b) remembers his appeals and has a strong belief that his state trial judge should have recused himself; (c) understands the "exact posture of his case at this point;" (d) is "able to accurately discuss many aspects of his case;" and (e) "appears to be able to have a rational understanding of the sentence, the results or effects of the sentence, and to still be able to discuss defense and legal theories with his attorneys."  D.E. 8-3 at 9–11.  At the evidentiary hearing, Dr. Kirkland testified that Mr. Madison is "able to discuss the posture of the case at this point in an accurate fashion," and is "able to be cognizant, aware . . . where he is with the case."  D.E. 8-1 at 16–17.  He also explained that Mr. Madison knows about his pending execution, and realizes that he has two possible sentences: execution and life without parole.  *Id.* at 23, 25–26.

The state trial court found, after considering the conflicting evidence, that Mr. Madison failed to prove by a preponderance of the evidence that he is incompetent.  *See* D.E. 8-2 at 10.  The state trial court accepted the testimony of

38

Dr. Kirkland as to Mr. Madison's understanding of the situation, and specifically found that Mr. Madison "has a rational[ ] understanding, as required by *Panetti*, that he is going to be executed because of the murder he committed and a rational[ ] understanding that the [s]tate is seeking retribution and that he will die when he is executed." *Id.*

I acknowledge that Dr. Kirkland may not have performed the most exhaustive of examinations, may not have asked the best questions, and may not have provided the most pristine opinion. But that is not dispositive because Alabama did not have the burden of proof. Given that Mr. Madison bore the burden of establishing his incompetency, and that the state trial court considered but implicitly rejected Dr. Goff's opinion, *see Hodges v. Attorney General*, 506 F.3d 1337, 1347 n.2 (11th Cir. 2007), I do not believe Mr. Madison can overcome the presumption of correctness given to that court's competency finding by clear and convincing evidence. *See Ferguson*, 716 F.3d at 1339–42; *Fults*, 764 F.3d at 1314, 1319–21. Stated differently, the state trial court's finding was not "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).[4]

## IV

Respectfully, and reluctantly, I dissent.

---

[4] Things might be different if Alabama had the burden of demonstrating that Mr. Madison is competent. But, as the case was litigated in the state court, it did not.