# SUPREME COURT OF THE UNITED STATES

JEFFERSON DUNN, COMMISSIONER, ALABAMA
DEPARTMENT OF CORRECTIONS *v.*
VERNON MADISON

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 17–193.   Decided November 6, 2017

PER CURIAM.

More than 30 years ago, Vernon Madison crept up behind police officer Julius Schulte and shot him twice in the head at close range. An Alabama jury found Madison guilty of capital murder. The trial court sentenced him to death. See *Ex parte Madison*, 718 So. 2d 104, 105–106 (1998).

In 2016, as Madison's execution neared, he petitioned the trial court for a suspension of his death sentence. He argued that, due to several recent strokes, he has become incompetent to be executed. The court held a hearing to receive testimony from two psychologists who had examined Madison and prepared reports concerning his competence. The court's appointed psychologist, Dr. Karl Kirkland, reported that, although Madison may have "suffered a significant decline post-stroke, . . . [he] understands the exact posture of his case at this point," and appears to have a "rational understanding of . . . the results or effects" of his death sentence. App. to Pet. for Cert. 75a (internal quotation marks omitted); *Madison* v. *Commissioner, Ala. Dept. of Corrections*, 851 F. 3d 1173, 1193 (CA11 2017) (internal quotation marks omitted). Asked at the hearing whether Madison understands that Alabama is seeking retribution against him for his criminal act, Dr. Kirkland answered, "Certainly." *Id.*, at 1180 (internal quotation marks omitted).

Dr. John Goff, a psychologist hired by Madison's coun-

sel, reported that Madison's strokes have rendered him unable to remember "numerous events that have occurred over the past thirty years or more." App. to Pet. for Cert. 77a. Nevertheless, Dr. Goff found that Madison "is able to understand the nature of the pending proceeding and he has an understanding of what he was tried for"; that he knows he is "in prison . . . because of 'murder' "; that he "understands that . . . [Alabama is] seeking retribution" for that crime; and that he "understands the sentence, specifically the meaning of a death sentence." *Id.,* at 76a–78a (some internal quotation marks omitted). In Dr. Goff's opinion, however, Madison does not "understan[d] the act that . . . he is being punished for" because he cannot recall "the sequence of events from the offense to his arrest to the trial or any of those details" and believes that he "never went around killing folks." *Ibid.* (internal quotation marks omitted).

The trial court denied Madison's petition. It held that, under this Court's decisions in *Ford* v. *Wainwright*, 477 U. S. 399 (1986), and *Panetti* v. *Quarterman*, 551 U. S. 930 (2007), Madison was entitled to relief if he could show that he "suffers from a mental illness which deprives [him] of the mental capacity to rationally understand that he is being executed as a punishment for a crime." App. to Pet. for Cert. 74a. The court concluded that Madison had failed to make that showing. Specifically, it found that Madison understands "that he is going to be executed because of the murder he committed[,] . . . that the State is seeking retribution[,] and that he will die when he is executed." *Id.,* at 82a.

Madison then filed a petition for a writ of habeas corpus in Federal District Court. As a state prisoner, Madison is entitled to federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) only if the state trial court's adjudication of his incompetence claim "was contrary to, or involved an unreasonable appli-

cation of, clearly established Federal law, as determined by" this Court, or else was "based on an unreasonable determination of the facts in light of the evidence presented" in state court. 28 U. S. C. § 2254(d). A habeas petitioner meets this demanding standard only when he shows that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington* v. *Richter*, 562 U. S. 86, 103 (2011). The District Court denied Madison's petition after concluding that the state court "correctly applied *Ford* and *Panetti*" and did not make an "unreasonable determination of the facts in light of the evidence." App. to Pet. for Cert. 67a.

The Eleventh Circuit granted a certificate of appealability and, on appeal, reversed over Judge Jordan's dissent. In the majority's view, given the undisputed fact that Madison "has no memory of his capital offense," it inescapably follows that he "does not rationally understand the connection between his crime and his execution." 851 F. 3d, at 1185–1186. On that basis, the Eleventh Circuit held that the trial court's conclusion that Madison is competent to be executed was "plainly unreasonable" and "cannot be reconciled with any reasonable application of *Panetti*." *Id.,* at 1187–1188 (internal quotation marks omitted).

We disagree. In *Panetti*, this Court addressed the question whether the Eighth Amendment forbids the execution of a prisoner who lacks "the mental capacity to understand that [he] is being executed as a punishment for a crime." 551 U. S., at 954 (internal quotation marks omitted). We noted that the retributive purpose of capital punishment is not well served where "the prisoner's mental state is so distorted by a mental illness that his awareness of the crime and punishment has little or no relation to the understanding of those concepts shared by the community as a whole." *Id.,* at 958–959. Similarly, in *Ford*, we ques-

tioned the "retributive value of executing a person who has no comprehension of why he has been singled out." 477 U. S., at 409. Neither *Panetti* nor *Ford* "clearly established" that a prisoner is incompetent to be executed because of a failure to remember his commission of the crime, as distinct from a failure to rationally comprehend the concepts of crime and punishment as applied in his case. The state court did not unreasonably apply *Panetti* and *Ford* when it determined that Madison is competent to be executed because—notwithstanding his memory loss—he recognizes that he will be put to death as punishment for the murder he was found to have committed.

Nor was the state court's decision founded on an unreasonable assessment of the evidence before it. Testimony from each of the psychologists who examined Madison supported the court's finding that Madison understands both that he was tried and imprisoned for murder and that Alabama will put him to death as punishment for that crime.

In short, the state court's determinations of law and fact were not "so lacking in justification" as to give rise to error "beyond any possibility for fairminded disagreement." *Richter*, *supra*, at 103. Under that deferential standard, Madison's claim to federal habeas relief must fail. We express no view on the merits of the underlying question outside of the AEDPA context.

The petition for a writ of certiorari and respondent's motion to proceed *in forma pauperis* are granted, and the judgment of the Court of Appeals is reversed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

JEFFERSON DUNN, COMMISSIONER, ALABAMA
DEPARTMENT OF CORRECTIONS *v.*
VERNON MADISON

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 17–193.   Decided November 6, 2017

JUSTICE GINSBURG, with whom JUSTICE BREYER and JUSTICE SOTOMAYOR join, concurring.

The issue whether a State may administer the death penalty to a person whose disability leaves him without memory of his commission of a capital offense is a substantial question not yet addressed by the Court. Appropriately presented, the issue would warrant full airing. But in this case, the restraints imposed by the Antiterrorism and Effective Death Penalty Act of 1996, I agree, preclude consideration of the question. With that understanding, I join the Court's *per curiam* disposition of this case.

# SUPREME COURT OF THE UNITED STATES

JEFFERSON DUNN, COMMISSIONER, ALABAMA
DEPARTMENT OF CORRECTIONS *v.*
VERNON MADISON

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 17–193. Decided November 6, 2017

JUSTICE BREYER, concurring.

I join the Court's *per curiam* disposition of this case for
the reason set forth in JUSTICE GINSBURG's concurrence
(which I also join). I write separately to underline the fact
that this case illustrates one of the basic problems with
the administration of the death penalty itself. That prob-
lem concerns the unconscionably long periods of time that
prisoners often spend on death row awaiting execution.
See *Glossip* v. *Gross*, 576 U. S. ___, ___–___ (2015)
(BREYER, J., dissenting) (slip op., at 2, 17–33).

As I have previously noted, this Court once said that
delays in execution can produce uncertainty amounting to
"'one of the most horrible feelings to which'" a prisoner
"'can be subjected.'" *Id.,* at ___ (slip op., at 20) (quoting *In
re Medley*, 134 U. S. 160, 172 (1890)). Justice Stevens
later observed that the delay in *Medley* was a delay of four
*weeks*. *Lackey* v. *Texas*, 514 U. S. 1045, 1046 (1995)
(memorandum respecting denial of certiorari). And he
wrote that the *Medley* description "should apply with even
greater force in the case of delays that last for many
years." 514 U. S., at 1046.

In light of those statements, consider the present case.
The respondent, Vernon Madison, was convicted of a
murder that took place in April 1985. He was sentenced
to death and transferred to Alabama's William C. Holman
Correctional Facility in September 1985. Mr. Madison is
now 67 years old. He has lived nearly half of his life on

death row.  During that time, he has suffered severe
strokes, which caused vascular dementia and numerous
other significant physical and mental problems.  He is
legally blind.  His speech is slurred.  He cannot walk
independently.  He is incontinent.  His disability leaves
him without a memory of his commission of a capital
offense.

Moreover, Mr. Madison is one among a growing number
of aging prisoners who remain on death row in this coun-
try for ever longer periods of time.  In 1987, the average
period of imprisonment between death sentence and exe-
cution was just over seven years.  See Dept. of Justice,
Bureau of Justice Statistics, T. Snell, Capital Punishment,
2013—Statistical Tables 14 (rev. Dec. 19, 2014) (Table 10).
A decade later, in 1997, the average delay was about 11
years.  *Ibid.*  In 2007, the average delay rose to a little less
than 13 years.  *Ibid.*  In 2017, the 21 individuals who have
been executed were on death row on average for more than
19 years.  See Death Penalty Information Center, Execu-
tion List 2017, online at https://deathpenaltyinfo.org/
execution-list-2017 (as last visited Nov. 3, 2017).  Alabama
has executed three individuals this year, including Thomas
Arthur, who spent 34 years on death row before his
execution on May 26, 2017, at the age of 75; Robert Mel-
son, who spent 21 years on death row before his execution
on June 8, 2017; and Torrey McNabb, who spent nearly
two decades on death row before his execution on October
19, 2017.

Given this trend, we may face ever more instances of
state efforts to execute prisoners suffering the diseases
and infirmities of old age.  And we may well have to con-
sider the ways in which lengthy periods of imprisonment
between death sentence and execution can deepen the
cruelty of the death penalty while at the same time un-
dermining its penological rationale.  *Glossip*, *supra,* at
___–___ (BREYER, J., dissenting) (slip op., at 17–18) (rec-

ognizing the inevitability of delays in light of constitutional requirements needed to ensure procedural and substantive validity of death sentences); see *ante,* at 1 (GINSBURG, J., concurring).

Rather than develop a constitutional jurisprudence that focuses upon the special circumstances of the aged, however, I believe it would be wiser to reconsider the root cause of the problem—the constitutionality of the death penalty itself. *Glossip, supra,* at \_\_\_ (BREYER, J., dissenting) (slip op., at 1).